**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |  |
|---|---|---|
| **COSTAR GROUP, INC., and COSTAR** | § | |
| **REALTY INFORMATION, INC.,** | § | **CASE NO. _____** |
| | § | |
| **Petitioners,** | § | |
| | § | **Underlying Action:** |
| **v.** | § | |
| | § | **CASE NO. 2:20-CV-08819-CBM-AS** |
| **RESTB.AI, LLC,** | § | **In the United States District Court for** |
| | § | **the Central District of California** |
| **Respondent.** | § | |
| | § | |

**COSTAR'S BRIEF IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

## TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................. 1

II.     SUBPOENA REQUESTS AT ISSUE........................................................... 4

        CoStar's Request No. 1 ................................................................................ 4

        Restb.ai's Objection and Response to Request No. 1:.................................. 5

        CoStar's Request No. 2:............................................................................... 5

        Restb.ai's Objection and Response to Request No. 2:.................................. 6

        CoStar's Request No. 5 ................................................................................ 6

        Restb.ai's Objection and Response to Request No. 5:.................................. 6

III.    BACKGROUND .......................................................................................... 7

IV.     ARGUMENT ............................................................................................... 11

        A.      The Documents Sought Are Relevant to CoStar's Copyright
                Infringement Claims and CREXi's Defenses ..................................... 12

        B.      The Remaining *Wiwa* Factors Favor Granting the Instant Motion..................... 14

V.      CONCLUSION............................................................................................ 17

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Century Int'l Arms Inc. v. XTech Tactical LLC*,
No. CV-18-03404-PHX-GMS, 2020 WL 224361 (D. Ariz. Jan. 15, 2020) ............................15

*CoStar Grp., Inc. v. Comm. Real Est. Exch. Inc.*,
No. 20-cv-08819-CMS-AS (C.D. Cal.) ....................................................................................1

*Orchestrate HR, Inc. v. Trombetta*,
2014 WL 772859 (N.D. Tex. Feb. 27, 2014).........................................................................12

*Soto v. Castlerock Farming & Transp., Inc.*,
282 F.R.D. 492 (E.D. Cal. 2012) ............................................................................................9

*Unicolors, Inc. v. Urb. Outfitters, Inc.*,
853 F.3d 980 (9th Cir. 2017) ................................................................................................13

*Wiwa v. Royal Dutch Petroleum Co.*,
392 F.3d 812 (5th Cir. 2004) ........................................................................................12, 14

### STATUTES

17 U.S.C.
§ 106(1) ...................................................................................................................................3
§ 106(3) ...................................................................................................................................3
§ 106(5) ...................................................................................................................................3
§ 504(c)(2) .............................................................................................................................13

### RULES

Fed. R. Civ. P. Rule 45 .............................................................................................................7, 11

### OTHER AUTHORITIES

*Watermark Detection*, Restb.ai,
https://restb.ai/solutions/watermark-detection/ (last visited Aug. 25, 2022) ............................2

# I.     INTRODUCTION

Commercial Real Estate Exchange, Inc. ("CREXi"), the defendant in CoStar Group, Inc. and CoStar Realty Information, Inc.'s ("CoStar's") copyright litigation pending in the Central District of California, contends that third party Restb.ai, LLC ("Restb") provides CREXi with a service that (at least in part) negates CoStar's allegations of willful infringement.  CoStar therefore served Restb with a subpoena seeking documents uniquely within Restb's custody and control. Restb does not dispute that the documents CoStar seeks are relevant.  Nonetheless, despite months of negotiations and continuous efforts on CoStar's part to alleviate the burdens with responding to the subpoena, Restb still refuses to respond in full to CoStar's subpoena, necessitating the present motion.

CoStar and CREXi each operate online commercial real estate marketplaces.  In September 2020, after discovering that CREXi had copied thousands of CoStar's copyrighted images—at least 11,324 to date—CoStar filed suit in the Central District of California.  *See CoStar Grp., Inc. v. Comm. Real Est. Exch. Inc.*, No. 20-cv-08819-CMS-AS (C.D. Cal.) (the "Litigation"); [Ex. 1, App. 56, ¶ 147; *see also id.* at 4, 6, 51, 73, ¶¶ 5, 9, 129, 196]; [Exs. 4–9, App. 193–216].  That infringement continued even after CoStar filed suit.  *See* [Ex. 1, App. 4, 51, ¶¶ 5, 129]*.*  Some of CoStar's copyrighted photographs were published on CREXi's website displaying CoStar's "star" logo, and some were published with that logo cropped out.  CoStar cannot—absent discovery— know the full extent of CREXi's infringing activity, not least because CREXi no longer publicly displays infringing photographs associated with properties that are no longer on the market.

CREXi has identified Restb and its documents as directly relevant to CoStar's claims in the Litigation.  Specifically, in response to an interrogatory asking CREXi to identify all "procedures, or protocols" CREXi has "put in place to avoid copyright infringement," CREXi

1

pointed to Restb, an artificial intelligence technology company specializing in real estate image recognition. CREXi claims to have ████████████████████████

████████████████████████████████████████████

███████████████████████████ CREXi further represents that ████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████.[1]

On February 1, 2022, CoStar served Restb with a subpoena, requesting, among other things, documents and communications regarding the operation of its technology, the work that it has done for CREXi, and whether and to what extent that work identified CoStar's copyrighted images on CREXi's website. *See* [Ex. 3, App. 181 (the "Subpoena")]. Thereafter, CoStar and Restb engaged in a meet-and-confer process that resulted in Restb's production of forty-seven documents, comprising ██████████████████████████████████████

████████████████████████████████████ The parties reached an impasse, however, regarding Restb's responses to Request Nos. 1, 2, and 5, which seek (among other documents)[2] ***internal*** Restb documents (*i.e.*, documents not in CREXi's possession)

---

[1] Despite identifying this process in response to an interrogatory seeking to discover CREXi's efforts to avoid copyright infringement, CREXi also claimed ██████████████████████ ████████████████████████████████████ Restb's website, however, states that one purpose of its watermark detection solution is to "Protect your company from copyright lawsuits." *Watermark Detection*, Restb.ai, https://restb.ai/solutions/watermark-detection/ (last visited Aug. 25, 2022).

[2] As set forth below, this Motion only seeks to compel a subset of the documents sought in Request Nos. 1, 2, and 5 that are uniquely in Restb's—and not CREXi's—possession. CoStar is, in parallel, seeking certain responsive documents from CREXi.

regarding (1) Restb's relationship with CREXi; (2) CoStar (including its photographs, website, and logo); and (3) Restb's technology (including how it works and its effectiveness).

CoStar is entitled to discovery concerning additional instances of CREXi's unlawful copying of CoStar's photographs (including instances identified by Restb), which bear directly on the extent and nature of CREXi's infringement, including its wilfulness, as well as the calculation of CoStar's damages and the scope of the injunction CoStar seeks in the Litigation. *See* 17 U.S.C. § 106(1), (3), (5). Restb possesses, but refuses to produce, unique documents and communications regarding its technology; the purpose, scope and results of its work for CREXi; the recognition of CoStar's star logo as identifying CoStar's copyright ownership; and CREXi's continuing display of CoStar photographs before and after this Litigation was filed.

Restb has not challenged the relevance of these documents. Rather, Restb has balked at producing any such documents before CREXi produces (different) documents, and has alluded to vague concerns about burden to the extent Restb would be required to search for and produce electronically stored information ("ESI") to respond to these Requests. Restb has also failed to follow through on its agreement to produce certain responsive noncustodial documents regarding how its technology filters images, how Restb communicates the results of its work to CREXi, and the effectiveness of identifying CoStar's watermark with Restb's technology that are responsive to Request Nos. 2 and 5; indeed, Restb produced only three such documents despite claiming for three months that it planned to review and produce potentially hundreds of noncustodial documents responsive to these requests.

To alleviate any of Restb's concerns regarding the potential burden of an ESI review, CoStar suggested narrowly tailored search terms to locate ESI, and also offered to pay the reasonable costs of Restb's ESI review. Restb initially rejected both proposals without

explanation.  Then, on the eve of CoStar filing the instant Motion, Restb offered a counter-proposal whereby Restb would conduct an ESI review of two custodians—though Restb did not identify what search terms it would run to identify responsive ESI—in exchange for CoStar agreeing not to seek *any* further documents from Restb (regardless of the deficiencies in Restb's—or CREXi's—ultimate production), and so long as CoStar paid for the costs associated with that review.  CoStar could not agree not to seek further documents from Restb before receiving Restb's production, but remained willing to negotiate the remainder of Restb's proposal.  CoStar asked Restb to identify the search terms it planned to use for its ESI search, provide an estimation of costs for that review, and address the deficiencies in its noncustodial production.  Restb declined to supplement its deficient noncustodial production and then withdrew in its entirety its limited offer to search ESI, claiming that "[u]pon further review, such searching is either unnecessary or unduly burdensome (or both)," but offering no factual basis for that new assertion.  [Ex. 15, App. 314–15].  CoStar was thus forced to file this Motion.

CoStar respectfully requests an order compelling Restb to respond to Request Nos. 1, 2, and 5 of CoStar's Subpoena, as narrowed (*see infra* below).

## II.       SUBPOENA REQUESTS AT ISSUE[3]

### CoStar's Request No. 1

*All Documents and Communications, from the date You first communicated with or about CREXi to the present, and whether internal, between You and CREXi, or otherwise, regarding Your relationship with CREXi, including all agreements and contracts between You and CREXi, all drafts thereof, any side agreements and amendments relating thereto, all Documents relating*

---

[3] The Subpoena sets forth nine document requests.  Request Nos. 1, 2, and 5 of the Subpoena are the focus of this Motion.

4

to the termination (if any) of Your relationship with CREXi, and all Documents regarding all payments between You and CREXi.

**Restb.ai's Objection and Response to Request No. 1:**

Respondent objects to this document request as unduly burdensome and oppressive to the extent it calls for the production of documents that the CoStar should already possess or could obtain from parties to the litigation. Respondent objects to this request to the extent it seeks documents protected by the attorney-client, work-product, or other applicable privilege(s) or exemption(s) from production. Respondent objects to this request as overbroad, unduly burdensome, vague, and ambiguous to the extent it requests "All Documents and Communications." Such a request is untailored and unduly burdensome for a third party.

Subject to the general and specific objections, Respondent is willing to meet and confer concerning an appropriate scope for this request.

**CoStar's Request No. 2:**

All Documents and Communications, whether internal, between You and CREXi, or otherwise, regarding CoStar, any CoStar-Derived Photograph, any CoStar-Derived Data, the CoStar Watermark, any CoStar Website or any CoStar Database, including the identification or potential identification of any CoStar- Derived Photograph, CoStar-Derived Data, or CoStar Watermark, any artificial intelligence or other means used to scan or review www.crexi.com for CoStar- Derived Photographs, CoStar-Derived Data, or the CoStar Watermark, any steps taken or to be taken once such identification has occurred (including removal from www.crexi.com), the location of any such photographs or data, the deletion of any such photographs or data, the applicability or non-applicability of copyright law or other legal protection to any such photographs or data, and/or the content of any CoStar Website or CoStar Database.

**Restb.ai's Objection and Response to Request No. 2:**

Respondent objects to this document request as unduly burdensome and oppressive to the extent it calls for the production of documents that the CoStar should already possess or could obtain from parties to the litigation. Respondent objects to this request to the extent it seeks documents protected by the attorney- client, work-product, or other applicable privilege(s) or exemption(s) from production. Respondent objects to this request as overbroad, unduly burdensome, vague, and ambiguous to the extent it requests "All Documents and Communications." Such a request is untailored and unduly burdensome for a third party.

Subject to the general and specific objections, Respondent is willing to meet and confer concerning an appropriate scope for this request.

**CoStar's Request No. 5**

All Documents and Communications, whether internal, between You and CREXi, or otherwise, concerning the use of the CoStar Watermark to identify photographs that are or may be owned by CoStar.  For the avoidance of doubt, this Request encompasses any and all procedures, policies or practices relating to Your work for CREXi, including the use of artificial intelligence or other means to scan or review www.crexi.com.

**Restb.ai's Objection and Response to Request No. 5:**

Respondent objects to this document request as unduly burdensome and oppressive to the extent it calls for the production of documents that the CoStar should already possess or could obtain from parties to the litigation. Respondent objects to this request to the extent it seeks documents protected by the attorney-client, work-product, or other applicable privilege(s) or exemption(s) from production.  Respondent objects to this request as overbroad, unduly burdensome, vague, and ambiguous to the extent it requests "All Documents and Communications." Such a request is untailored and unduly burdensome for a third party.

*Subject to the general and specific objections, Respondent is willing to meet and confer concerning an appropriate scope for this request.*

### III.    BACKGROUND

CREXi's discovery responses in the Litigation indicate that it has already identified—via Restb—a subset of photographs published on CREXi's website that bear CoStar's watermark.  In response to an interrogatory asking CREXi to identify protocols it "put in place to avoid copyright infringement," CREXi stated ███████████████████████████

██████████████████████████████████████████

███████████████ According to CREXi, █████████████████████

████████████████████████████ CREXi then claims █████████

██████████████████████████████████████████

████████████████

On February 1, 2022, CoStar served Restb with a third-party subpoena under Rule 45 that set forth nine document requests narrowly tailored to seek documents and communications related to the services Restb provided to CREXi.  *See* [Ex. 3, App. 189–91].  In addition to Request Nos. 1, 2, and 5 (*see supra* at 4–6), the Subpoena requests the production of: photographs identified by Restb as bearing CoStar's watermark (No. 3); documents and communications regarding photographs Restb previously identified as bearing CoStar's watermark (the "star" logo) but no longer possesses (No. 4), information regarding Restb's access to CoStar's websites or databases (No. 6), information regarding agents or contractors used by CREXi to research, collect, or verify commercial real estate information (No. 7), Restb's involvement in any intellectual property litigation (No. 8), and Restb's document preservation obligation (No. 9).  [Ex. 3, App. 189–91].

In parallel, CoStar sought Restb-related documents from CREXi, including communications between CREXi and Restb and all images in CREXi's possession that were identified by Restb as containing CoStar's watermark.  *See* [Ex. 10, App. 235]; [Ex. 11, App. 241–47].  While CREXi agreed to produce certain documents and communications with Restb (using a limited set of search terms and custodians), it has yet to do so.  CREXi resisted production of Restb-identified images, forcing CoStar to move to compel their production.  *See* [Ex. 12, App. 252].  The Central District of California ultimately ordered CREXi to produce all CoStar images in its possession identified by Restb.  *See* [Ex. 13, App. 296].  To date, CREXi appears ██████

██████████████████████████████████████████.[4]

Meanwhile, after CoStar agreed to provide Restb an extension to its response date, Restb responded to the Subpoena on March 24, 2022.  *See* [Ex. 14, App. 299].  Restb made general and specific objections to CoStar's requests but otherwise stated that it was "willing to meet and confer concerning an appropriate scope" for each Request.  *See* [*id.* at 303, 305–10].  A meet-and-confer effort ensued over the following six-and-a-half months, including four teleconferences and numerous email exchanges.

During the meet-and-confer process, Restb represented that it has no documents responsive to Request Nos. 4, 6, 7, 8, and 9, and agreed to produce certain noncustodial documents responsive to Request No. 1 (contracts and invoices).  [Ex. 15, App. 323].  In response to Request No. 1, Restb produced forty-four documents, consisting of ██████████████████████

████████████████████████████████████ Several of the ████████████████████████

████████████████████████████████████ Restb also

---

[4] These images would be responsive to the Subpoena, but CoStar does not seek them from Restb at this time, *see infra* at 9 n.5.

produced 

Critically, however, none of these

Restb also agreed to conduct a targeted review of noncustodial documents for purposes of producing documents sufficient to show how its technology filters images (Request No. 2(d)), how Restb communicates the results of its work to CREXi (Request No. 2(e)), and the effectiveness of identifying CoStar's watermark with Restb's technology (Request No. 5). *See* [Ex. 15, App. 320]; [Ex. 15, App. 323].  Three months after it agreed to conduct this targeted review and production, however, Restb produced only three documents: one partially redacted

(CREXi did not produce a privilege log or otherwise provide a basis for its redactions), one                                        , and one

None of these generic documents, however, provide sufficient context to understand how Restb's technology filters images, and none make any mention of CREXi or CoStar.

For its part, CoStar agreed not to seek documents in response to Request No. 3 (all photographs identified by Restb as bearing CoStar's watermark), conditioned on CREXi's production of those images in accordance with the Central District of California's Order.[5]  *See* [Ex. 13, App. 296]; [Ex. 15, App. 324–25].  CoStar further agreed, at this time, to seek only internal

_____

[5] CoStar reserves all rights to seek these images from Restb in the event that CREXi's production is deficient. *See Soto v. Castlerock Farming & Transp., Inc.*, 282 F.R.D. 492, 505 (E.D. Cal. 2012) (finding that while,"[i]n general, there is a preference for parties to obtain discovery from one another before burdening non-parties with discovery requests," subpoenaing party established its need to obtain documents from third party when it first sought documents from opposing party, who largely refused to produce responsive documents).

Restb documents and communications (*i.e.*, excluding communications *with* CREXi that should be in CREXi's possession).  *See* [Ex. 15, App. 324].[6]

Meet-and-confer discussions broke down, however, over Restb's review of custodial ESI to respond to Request Nos. 1 and 2.  Restb initially stated that it would be willing to consider responding to more narrowed versions of the Requests.  *See id.*  CoStar then spent months conferring with Restb on ways to minimize the burden, and provided Restb with documents exemplifying the type of responsive documents that CoStar is seeking in order to help Restb identify parameters for Restb's search and collection of responsive documents.  *See id.*  Over a month later, during a June 14 meet-and-confer call, Restb stated that it would be willing to consider search terms for Request Nos. 1 and 2, and further asked CoStar to pay for reasonable costs associated with this review.  *See* [Ex. 15, App. 322–24].

In order to significantly reduce any potential burden on Restb, CoStar agreed to Restb's requests—providing on June 21, 2022, a list of six proposed search terms, and agreeing to bear reasonable costs associated with Restb's ESI review.  After *seventeen* weeks of negotiation, however, Restb reversed course, claiming that it "would be unduly burdensome for a third party" to conduct an ESI review and production in response to Request Nos. 1 and 2.  *See* [Ex. 15, App. 322].  (Restb asserted that CoStar's search terms were facially overbroad, but did not produce a search term "hit report" for CoStar's six proposed search terms, so CoStar has no meaningful way to evaluate this assertion.  Moreover, Restb did not make a counter-proposal.)  The parties confirmed that they were at an impasse during a July 22, 2022 meet-and-confer call, and CoStar stated its intent to seek judicial relief.  *See* [Ex. 15, App. 320].

---

[6] CoStar likewise reserves all rights to seek these communications with Restb in the event that CREXi's production is deficient.  *See supra* n.5.

10

Prepared to file the instant Motion in short order, CoStar emailed Restb on August 31, asking whether it would consent to a motion to transfer the motion to compel from the Northern District of Texas (the district where compliance with the Subpoena is required) to the Central District of California, where the underlying litigation is pending.  [Ex. 15, App. 319].  Despite repeated requests, Restb did not meaningfully respond to that request until over three weeks later, when it reversed course again.  On September 22, Restb offered to conduct a limited ESI search for documents responsive to Request Nos. 1 and 2 in the email files of its Chief Product Officer and Chief Operations Officer conditioned on: "(1) CoStar seeking no further documents from Restb, and (2) CoStar paying the costs of the review."  [Ex. 15, App. 316–17].  Restb asserted, however, that it would not make any further productions of noncustodial documents responsive to Request Nos. 1, 2, and 5.  *See id.*  While CoStar re-confirmed its willingness to bear the reasonable costs of an ESI review, CoStar also stated that it needed to know the search terms that Restb planned to use to locate potentially responsive ESI, and to reserve its right to seek additional documents from Restb.  CoStar also asked whether Restb was willing to reconsider remedying the deficiencies in its production of three noncustodial documents in response to Request Nos. 2 and 5. [Ex. 15, App. 316].  Restb responded by yet again reversing course, withdrawing in its entirety its limited offer to search ESI.  [Ex. 15, App. 315].  This Motion followed.

## IV.    ARGUMENT

The only dispute here is whether the admittedly relevant documents and information CoStar seeks under Rule 45 are unduly burdensome for Restb to gather and produce, negating Restb's obligation to respond to the subpoena.  A court determining the propriety of a Rule 45 subpoena "must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice or burden to the other party."  *Orchestrate HR,*

*Inc. v. Trombetta*, 2014 WL 772859, at *2 (N.D. Tex. Feb. 27, 2014).  "To determine whether the subpoena presents an undue burden, [a court] consider[s] the following factors: (1) relevance of the information requested; (2) the need of the party for the documents; (3) the breadth of the document request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested documents; and (6) the burden imposed."  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).  As detailed below, the relevance of the material CoStar seeks outweighs any burden on Restb.

### A.    The Documents Sought Are Relevant to CoStar's Copyright Infringement Claims and CREXi's Defenses

There is no dispute that the documents and communications CoStar seeks from Restb are relevant to both CoStar's copyright infringement claims and CREXi's defenses.  In Request No. 1, CoStar seeks communications "regarding [Restb's] relationship with CREXi," [Ex. 3, App. 189], which encompasses ESI related to the purpose of Restb's services to CREXi as Restb understood it (*e.g.*, to identify third-party copyrighted images on CREXi's website).  Request No. 1 further encompasses internal Restb communications regarding the nature and scope of services it performed for CREXi (*e.g.*, searching for and identifying only copyrighted images that CREXi publishes on its website, or also those that it stores offline), and any discussions regarding the results of Restb's scan of CREXi's website and need to increase or expand the scope of its services to capture additional infringing activity.  *See* [Ex. 15, App. 323].  Similarly, Request Nos. 2 and 5 target Restb communications regarding CoStar specifically, including ESI sufficient to show how Restb's technology identifies CoStar's watermark or photographs, the effectiveness of that technology, where Restb stores those photographs, and how it removes those photographs from CREXi's website.  *Id.*

12

Among other purposes, this discovery bears upon to what extent, CREXi "was actually aware of [its] infringing activity" or displayed a "reckless disregard for, or willful blindness to" CoStar's copyrights, an element of willful copyright infringement. *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017); *see also* 17 U.S.C. 504(c)(2) (providing for statutory damages up to $150,000 per instance of willful infringement). Indeed, CREXi has taken the position that "the fact that CREXi engaged Restb is relevant to CREXi's good faith and lack of willfulness." [Ex. 12, App. 283–84; *see also id.* at 283 ("CREXi employs Restb in a good faith effort to prevent infringement and to preserve the integrity of CREXi's brand by avoiding displaying third-party logos on its website.")]; ███████████████████████████.

Notably, the forty-seven documents Restb has produced to date only reinforce the relevance of the additional internal Restb documents sought in this Motion. Restb's ████████ ████ indicate ██ ████ ████ ██ ██████ █ ████████ ██ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ████████████ But without additional communications discussing the scope and nature of this work, CoStar has no way of determining ██████████████████████ ███████████████████████████████████████████ ████████ The ████████████ Restb produced ███████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████ The

13

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████ this only reinforces CoStar's conclusion that Restb played a key role in identifying images bearing CoStar's watermark, and underscores the relevance of the additional documents sought to fully understanding that role.

**B.      The Remaining *Wiwa* Factors Favor Granting the Instant Motion**

The remaining *Wiwa* factors all weigh in favor of granting the Motion—the documents and information CoStar seeks are necessary and proportionate to the needs of the case, limited in time and particularly defined, and the burden on Restb is minimal. *See Wiwa*, 392 F.3d at 818. As explained above, the limited discovery from Restb to date (as well as recent productions from CREXi) reflect that Restb has undertaken critical work for CREXi that cannot be properly understood or placed in context without the production of the additional internal Restb communications and documents sought here, which are particularly circumscribed, and cannot be obtained from another source, including CREXi. Specifically, at this time, CoStar seeks only two narrow categories of information from Restb: (1) ESI from a three-year period (February 2019 to the present) that is not in the possession of either CoStar or CREXi, the parties to the Litigation; and (2) a targeted production of noncustodial documents from the same three-year period that are sufficient to show how Restb's technology filters images for CREXi, how Restb communicates the results of its work to CREXi, and the effectiveness of identifying CoStar's watermark with Restb's technology. Restb's production of the internal communications and documents responsive to these narrow categories would allow CoStar to better understand Restb's relevant role and recognition of CoStar's star logo as identifying CoStar's copyright ownership, as well as the nature

14

of CREXi's infringement, including its copying and display of CoStar-owned photographs before and after this Litigation was filed.

Restb has never articulated a specific burden associated with providing this discovery, and any burden on Restb associated with collecting and producing the requested ESI would be minimal. The fact that CoStar has offered (and remains willing) to pay the reasonable costs of Restb's targeted ESI searches is fatal to Restb's claims that any burden here is "undue." *See* [Ex. 15, App. 321]; *cf. Century Int'l Arms Inc. v. XTech Tactical LLC*, No. CV-18-03404-PHX-GMS, 2020 WL 224361, at *2 (D. Ariz. Jan. 15, 2020) (denying motion to quash third-party subpoena in part because subpoenaing party offered to incur costs "in an effort to diminish any expense or effort to be expended by [third party] in responding to the subpoena"). Furthermore, CoStar remains willing to negotiate custodians and search terms with Restb if necessary to further minimize the burden to Restb. Indeed, prior to this Motion, CoStar proposed just six targeted search terms to try to limit the number of documents Restb would need to review for responsiveness:

1. Costar*

2. [in the alternative to #1] Costar* and (watermark* or logo* or photo* or image* or own*)

3. CREXi

4. [in the alternative to #3] CREXi and (costar* or logo* or photo* or image* or identif* or find* or found or flag* or hit* or scan* or locate* or infring*]

5. @crexi.com

6. Restb* w/10 (technolog* or filter* or intelligen* or copyright*).

*See* [Ex. 15, App. 323–24].

Restb initially suggested that those terms are "not [geared toward] narrowly targeting any relevant documents," [Ex. 15, App. 322]; but has never explained why, and common sense dictates otherwise.  For example, CoStar proposed "CoStar" and "CREXi" as terms because, to CoStar's knowledge, Restb's only engagement with CREXi involves screening for CoStar's copyrighted images and watermark, and thus ESI referring to CREXi or CoStar would be, presumably, responsive to Request Nos. 1 and/or 2.  In the event "CoStar" or "CREXi" hit upon an unreasonable number of communications, CoStar suggested alternative variations on these terms.  But Restb never provided CoStar with a search term hit report, so CoStar has no meaningful way to even assess what the true burden to Restb might be from running these terms.  (To be sure, if a search term hit report reveals that CoStar's proposed terms capture an unduly disproportionate number of documents, CoStar remains willing to negotiate search terms.)

Then, three months after CoStar proposed those search terms and after it informed Restb that it would seek Court intervention, Restb appeared willing to conduct an ESI review—thus critically undermining any claim of undue burden—but only for two custodians, using unknown search terms, and in exchange for CoStar agreeing to "seek[] no further documents from Restb." *See* [Ex. 15, App. 316–17].  For obvious reasons, this lack of transparency (combined with the condition that CoStar forego any ability to seek additional documents regardless of the results of this ESI review) was unacceptable to CoStar.  But when CoStar asked Restb to provide more details regarding its proposal, rather than identify the search terms it planned to use as part of its ESI review, Restb withdrew its offer altogether and said that it had decided upon "further review" that its response to CoStar's Subpoena was sufficient.  [Ex. 15, App. 315].  Restb's shifting, unsubstantiated positions on "burden" should be given no weight.

## V.      CONCLUSION

For the reasons stated herein, CoStar thus respectfully requests an order compelling Restb to promptly produce, for the time period February 1, 2019, to the present:  (1) all internal ESI (documents and communications) hitting on the search terms proposed by CoStar in its June 21, 2022 email that are responsive to Request Nos. 1, 2, and 5; and (2) noncustodial documents that are responsive to Request Nos. 2 and 5.

Respectfully submitted,

/s/ Andrew Strelka

Andrew Strelka
D.C. Bar No. 1022560
LATHAM & WATKINS, LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
andrew.strelka@lw.com

Nicholas J. Boyle (*pro hac vice forthcoming*)
D.C. Bar No. 481098
Sarah A. Tomkowiak (*pro hac vice forthcoming*)
D.C. Bar No. 987680
Latham & Watkins, LLP
555 Eleventh Street, NW
Suite 1000
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201
nicholas.boyle@lw.com
sarah.tomkowiak@lw.com

*Counsel for Petitioners*
*Costar Group, Inc., and Costar Realty*
*Information, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on October 12, 2022, a true and correct copy of the foregoing document has been filed via the Court's electronic filing system, and that all counsel have been served in accordance with Rule 5 of the Federal Rules of Civil Procedure.

                            /s/ *Andrew Strelka*
                            Andrew Strelka